IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| LYNSEY HARPER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:21-cv-01472-DCN |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| CHARLESTON COUNTY SCHOOL DISTRICT, and CHRISTOPHER HAYNES, *in his individual capacity*, | ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

  This matter is before the court on Magistrate Judge Mary Gordon Baker's report and Recommendation ("R&R"), ECF No. 30, on defendants Charleston County School District (the "District") and Christopher Haynes' ("Haynes" and together with the District, "defendants") motion for summary judgment, ECF No. 24. For the reasons set forth below, the court adopts the R&R and grants summary judgment.

## I. BACKGROUND

  The R&R ably recites the facts of the case, and the parties do not object to the R&R's recitation thereof. Therefore, the court will only briefly summarize material facts as they appear in the R&R for the purpose of aiding an understanding of the court's legal analysis.[1]

  This case presents an employment dispute between the District and a teacher, plaintiff Lynsey Harper ("Harper"). Harper's employment with the District began in

---

[1] The court dispenses with citations throughout and notes that unless the court states otherwise or cites to another source, the facts are gleaned from the R&R and the complaint, ECF No. 1.

1

January 2016, when she started teaching science at Daniels Jenkins Academy, an alternative school for elementary and middle school students. During the 2016–2017 and 2017–2018 school years, Harper taught science to middle school students at Liberty Hill Academy ("Liberty Hill"). Liberty Hill is a school that serves students with high special needs and students with severe disciplinary problems who would otherwise have been expelled from their home schools. The goal was for students to attend Liberty Hill for a finite period of time and return to their home schools once their behavior improved. Haynes was the principal at Liberty Hill.

Harper is a Caucasian woman and claims that she was regularly harassed by the students at Liberty Hill based on her race and gender. She alleges that the students frequently called her a "white b****," told her "f*** you" and "f*** off," swore at her, made sexual comments in her presence, and, on at least one occasion, threatened violence. Harper does not claim that she was ever harassed by any District employee.

During the 2016–2017 school year, the District implemented a new disciplinary referral system, through which teachers could submit referrals to administrators, who would review those referrals. Teachers could code the referrals that they filed in the system based on the category of misconduct involved. Many such referrals were filed in this system by many different teachers at Liberty Hill. Notably, Harper submitted 255 of the 3,776 referrals submitted to the system during that school year. ECF No. 28-13 at 4–5.

On November 8, 2017, Haynes sent an email to the teachers at Liberty Hill, which stated:

> I just finished "closing without action" 159 discipline referrals. I am not sure if you get email notices for those. However, I feel that you deserve

> transparency and an explanation when I do that to the referrals that you write. First of all, you did nothing wrong. You are writing referrals as we have asked you to do. The issue is that we have had is that with being short staffed, it has been virtually impossible for Ms. Wicker to handle all of the referrals that have come to her. She has also had little help with this. I also believe that after a certain time, referrals are not effective in changing behaviors. That is why I went and closed the referrals. I closed all referrals that had not been acted upon from the beginning of the year until October 13th. Any referrals written after that date are still active and will be handled immediately.

R&R at 3 (quoting ECF No. 28 at 12). After that, many of the student discipline referrals were "closed without action" at the end of the 2017–2018 school year.

Despite Harper's signing a contract to teach at Liberty Hill during the 2018–2019 school year, she began looking for a new teaching position in a different district in February 2018. On June 13, 2018, she sent a resignation email to Haynes, which read:

> As you know, I was looking for a teaching position closer to home. I interviewed with the principal at College Park Middle School today and I was offered a position for the 2018-2019 school year contingent on being released from my contract with Charleston County. I have enjoyed the last two years and I have learned a lot from you.

R&R at 4 (quoting ECF No. 25-3 at 12). The District then released Harper from her contract.

The South Carolina Human Affairs Commission ("SCHAC") issued Harper a Notice of Right to Sue Letter on May 15, 2019. She then filed this case on May 18, 2021.[2] ECF No. 1, Compl. She asserts claims for (1) race-based and sex-based hostile

---

[2] Typically, a person who wishes to file a suit under Title VII must file a charge with either the Equal Employment Opportunity Commission ("EEOC") within 180 days after the alleged unlawful employment practice or with the equivalent state agency within 300 days after the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). Once the agency issues a right to sue letter, the plaintiff has ninety days to file a lawsuit. Id. § 2000e-5(f)(1). In this case, Harper claims she suffered harassment until June 4, 2018, and she filed her charge with the SCHAC 156 days later, on November 6, 2018. ECF No. 25 at 7. The SCHAC issued a right to sue letter on May 15, 2019. Id. Harper originally filed her lawsuit in this court twenty-one days later, on June

3

work environment and constructive discharge in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq.; (2) violation of her equal protection rights pursuant to 42 U.S.C. § 1983; and (3) violation of 29 C.F.R. § 1604.11(e).[3] See id. Pursuant to 28 U.S.C. § 636 and Local Civ. Rule 73.02(B)(2)(a) (D.S.C.), the action was thereafter referred to Magistrate Judge Baker for pretrial proceedings. The District moved for summary judgment on February 21, 2023, ECF No. 24, and Harper responded in opposition on March 27, 2023, ECF No. 28. On July 28, 2023, the magistrate judge issued an R&R in which she recommended that the District's motion be granted. ECF No. 30. Harper objected to the R&R on August 31, 2023, ECF No. 35, and the District replied on September 14, 2023, ECF No. 36. As such, this matter is fully briefed and ripe for the court's review.

## II.  STANDARD

### A.  Order on R&R

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The recommendation of the magistrate judge carries no presumptive weight, and the

---

4, 2019. ECF No. 1, Harper v. Charleston Cnty. Sch. Dist., 2:19-cv-01597-DCN-MGB (D.S.C. filed June 4, 2019). However, her original complaint was dismissed without prejudice by joint stipulation of the parties on June 9, 2020. ECF No. 18, Harper, 2:19-cv-01597-DCN-MGB. In their joint stipulation, the parties agreed that the statute of limitations would be tolled so long as the suit was refiled within one year. Id. at 1. Harper accordingly refiled this suit on May 18, 2021. Compl.

[3] Harper also initially asserted another cause of action pursuant to 42 U.S.C. § 1981. However, she withdrew that claim prior to the magistrate judge issuing the R&R. See ECF No. 28 at 1.

responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made. Id.

However, in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted). Furthermore, "[a] party's general objections are not sufficient to challenge a magistrate judge's findings." Greene v. Quest Diagnostics Clinical Lab'ys, Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted). When a party's objections are directed to strictly legal issues "and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citation omitted). Analogously, de novo review is unnecessary when a party makes general and conclusory objections without directing the court's attention to a specific error in a magistrate judge's proposed findings. Id.

**B. Summary Judgment**

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine

issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In so doing, the court must view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III.   DISCUSSION

The magistrate judge recommended granting summary judgment on each of Harper's remaining causes of action. R&R at 7. Harper objects and argues that the court should deny the District's motion for summary judgement in its entirety. ECF No. 35 at 2. The court will analyze Harper's objections by taking each cause of action in turn.

**A. Title VII Claims**

**1. Hostile Work Environment**

To establish a prima facie Title VII hostile work environment claim based on her sex and race, Harper must demonstrate four elements: (1) she experienced unwelcome harassment; (2) the harassment was based on her race and/or sex; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis of imposing liability on her employer. Perkins v. Int'l Paper Co., 936 F.3d 196, 207–08 (4th Cir. 2019). The parties do not

6

dispute that Harper experienced unwelcome harassment, and neither party objects to the magistrate judge's finding that Harper has demonstrated the second and third elements of her claim. See R&R at 7–14; ECF Nos. 35; 36. As such, the court reviews the magistrate judge's findings on the first three elements for clear error. See Diamond, 416 F.3d at 315. Finding none, the court adopts the magistrate judge's reasoning on these first three elements and proceeds to consider Harper's objections to the magistrate judge's findings on the fourth and final element.

Harper does not object to the magistrate judge's recitation of the law with relation to this element. ECF No. 35 at 3. As the magistrate judge explained, the Fourth Circuit uses a negligence standard when deciding whether an employer can be liable for third-party harassment under Title VII, and "an employer cannot avoid Title VII liability for [third-party] harassment by adopting a 'see no evil, hear no evil strategy.'" Freeman v. Dal-Tile Corp., 750 F.3d 413, 422–23 (4th Cir. 2014) (alteration in original) (quoting Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 334 (4th Cir. 2003) (en banc)). A plaintiff must establish two prongs for third-party harassment to be imputable to his or her employer: "[1] the employer knew or should have known of the harassment and [2] failed 'to take prompt remedial action reasonably calculated to end the harassment.'" Id. at 423 (quoting Amirmokri v. Balt. Gas & Elec. Co., 60 F.3d 1126, 1131 (4th Cir. 1995)).

The magistrate judge recommended granting summary judgment on Harper's hostile work environment claim because she found that Harper failed to demonstrate the first prong. R&R at 14–17. Stated differently, the magistrate judge found that Harper failed to produce evidence showing that defendants had actual or constructive knowledge of the harassment. Id. The magistrate judge also explained in a footnote that, even if

7

Harper had met the first prong, she would still recommend granting summary judgment on this claim because "the record indicates that Defendants took action that was reasonably calculated to end the harassment." Id. at 17 n.4. Harper objects to both conclusions. ECF No. 35 at 4–24.

As for the first prong, the magistrate judge found that "the record irrefutably establishes that [Harper] never filed a formal or informal harassment complaint and never told Defendant Haynes (or any other administrator) that she felt her students were harassing her because of her sex and race." R&R at 16. The magistrate judge went on to specifically explain why Harper's student disciplinary referrals were not sufficient to put the defendants on notice of Harper's harassment. First, Harper never coded a student discipline referral as "harassment," nor did she seek guidance on how to properly code the referrals. Id. Second, the magistrate judge found that "it [was] reasonable that an administrator reading [Harper's] student discipline referrals would not necessarily assume that [Harper] was complaining of sexual and racial harassment." Id. at 17.

Harper argues that there is a genuine issue of material fact as to whether her disciplinary referrals should have put defendants on notice of the hostile work environment. ECF No. 35 at 4. She claims that she made hundreds of disciplinary referrals, which should have put the District's administrators on notice of the harassment. Id. at 5–7. To illustrate this point in her objections, she provides the following sample from the disciplinary referrals she filed:

- **8/28/17:** Plaintiff reported a student who threw a pencil at her and said "I'm going to box you, b[****]." (See [ECF No. 29-1] at 796).

- **9/13/17:** Plaintiff reported a student who "verbally changed a definition and said, 'It is a muscular tube that connects the mouth to the dick. She's saying you suck dick! There are 2 people in this room who suck dick.'" Defendant Haynes watched a video of the incident where the

> perpetrator provoked a female "with his words and his pointing at her with regards to sexual issues. He continued to call her a 'dike' and a 'man' during his conversation with administrators." (See id. at 798).
>
> - **10/23/17:** Plaintiff reported that a male student "yelled at a female peer, 'Don't play with me, play with your f[******] girlfriend. She's got 1, 2, 3, 4 dicks in her mouth.'" (See id. at 812).
>
> - **11/1/17:** Plaintiff reported that a male student stated "'F[***] off, b[****]. F[***] you, Mrs. Harper.' He attempted to return to class moments later by banging on the door and yelling 'Let me in and I'll knock you to the ground.'" (See id. at 813).
>
> - **11/7/17:** Plaintiff reported a student who "refused to do any classwork, despite being redirected several times. She used excessive profanity during class. Told a female classmate about another female classmate, 'she wants you to lick and suck her a[**].'" (See id. at 820).
>
> - **11/8/17:** Plaintiff reported a student who said "Shut the f[***] up, b[****], that's why nobody likes you at this school now." (See id. at 821).
>
> - **11/8/17:** Plaintiff reported a student who "would not stop singing and leading an inappropriate (sic) She said, 'What did you do, eat her p[****]?' When TA came to remove student, she said 'Shut the f[***] up, I ain't going no where'. As she was walking out she said to me, 'B[****], you a snitch.'" (See id. at 823).
>
> - **11/16/17:** Plaintiff reported a student who "was arguing loudly with a male peer about his granny giving him money and 'you need to get a check'. She then involved a female peer in the altercation by calling her 'stank' and stated, 'If you were a real dyke, your mamma would know you were gay.'" (See id. at 831).

ECF No. 35 at 6. While Harper acknowledges that she did not properly code these referrals as "harassment" when putting them in the system, she argues that (1) their content was sufficient to put defendants on notice of the harassment and (2) the computer system used to input the referrals was confusing, and "she was confident that any reasonable person reading them would have understood their plain meaning." Id. at 7.

In addition to the referrals, Harper points to her own deposition testimony in which she testified that the students' behavior was "unbearable" and had led her to tears

9

at work multiple times, which she says Haynes witnessed. Id. at 8–9, 11–14 (quoting ECF No. 28-3, Harper Dep. at 180:13–181:24). She also points to Haynes's testimony that he personally witnessed teachers, including Harper, crying and stressed out at work. Id. at 11–12 (citing ECF No. 29, Haynes Dep. at 18:7–15, 30:6–33:4). Haynes also testified that he personally observed students calling teachers, both male and female, "b[****]," "f[******] white b[****]," and other similarly colorful expressions. ECF No. 29, Haynes Dep. at 30:6–32:15. Thus, Harper argues that defendants had actual knowledge of the behavior. ECF No. 35 at 11.

Through the evidence Harper points to in her objections, Harper has undoubtedly shown that Haynes was aware of the students' poor behavior directed at teachers. See id. at 5–14. However, as the magistrate judge pointed out, some of the teachers at the school found this conduct to be harassment, and others did not. ECF No. 25-1, Haynes Aff. ¶ 6; 25-6, Coker Dep. at 119:10–123:2. Thus, even if Haynes or another administrator witnessed the students' conduct, or read about the conduct in Harper's referrals, nothing would have put them on notice of the fact that Harper, herself, considered the behavior harassment. Cf. Freeman, 750 F.3d at 424 (reversing grant of summary judgment when the employer knew about incidences of sexual and racial harassment and should have known that the employee found these incidences offensive).

In her testimony, Harper acknowledges that she never told Haynes, anyone in the Liberty Hill's administration, or anyone in the Human Resources department that she felt she was being discriminated against.[4] ECF No. 25-1, Harper Dep. at 175:13–177:14.

---

[4] In contrast, Harper cites two of this court's previous cases in her objections, but both of those cases are distinguishable because the teachers in those cases complained to their supervisors about the harassment while they were still employed at their respective

10

This was in spite of the fact that the District had policies in place to permit teachers to report incidents of harassment. Id. at 189:24–191:7. Yet it is undisputed that Harper did not file a formal harassment report while she was employed by the District. Id.

While the type of behavior Harper describes is not something any teacher should have to face, Harper bore a "significant responsibility in notifying [her] employer" if she felt that the conduct amounted to harassment. EEOC v. Xerxes Corp., 639 F.3d 658, 674 (4th Cir. 2011) (quoting Howard v. Winter, 446 F.3d 559, 567 (4th Cir. 2006)). "[A]n employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists' under its reasonable procedures." Id. For this reason, the magistrate judge was correct to find that there is no genuine dispute of material fact over whether the student's behavior can be imputed to the District, and summary judgment is appropriate. As such, the court adopts the R&R and grants summary judgment with respect to this claim.[5]

---

schools. See Kandrac v. Charleston Cnty. Sch. Dist., 2007 WL 9735153, at *14 (D.S.C. Mar. 16, 2007) ("Plaintiff testified she reported incidents of racial harassment to [the principal] pursuant to [the district's] policy, and [the principal] testified she knew of the harassment committed by students."); Stokes v. Charleston Cnty. Sch. Dist., 2007 WL 858864, at *6 (D.S.C. Mar. 16, 2007).

[5] Because the court finds that defendants had no actual or constructive knowledge of the harassment, the court declines to reach the question of whether defendants' response was reasonably calculated to end the harassment. Nevertheless, the court notes that, despite Harper's assertions otherwise, defendants did take action in response to many of Harper's referrals. The record shows many of the referrals include a section describing what consequences occurred because of the students' behavior. See ECF No. 25-5. Haynes also testified about there being a button on the wall that teachers could press when a student became disruptive and explained that, when the button was pressed, a staff member responded and removed the student from class. ECF No. 29 at 76:16–77:3. There is no dispute that the special circumstances at Liberty Hill, which provides education for students with high special needs and students who because of their disciplinary problems would be expelled from their home schools, created a unique teaching environment that was different from that faced by other teachers at other schools, and the Fourth Circuit takes this into account when determining whether

### 2. Constructive Discharge

"The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" Green v. Brennan, 578 U.S. 547, 555 (2016) (quoting Pa. State Police v. Suders, 542 U.S. 129, 141 (2004)). There are two elements to a constructive discharge claim: "First, a plaintiff must show that his working conditions became so intolerable that a reasonable person in the employee's position would have felt compelled to resign. Second, a plaintiff must actually resign because of those conditions." Perkins, 936 F.3d 196, 211–12 (4th Cir. 2019) (internal quotation marks and citations omitted) (quoting Green, 578 U.S. at 555). "[I]ntolerability is assessed by the objective standard of whether a reasonable person in the employee's position would have felt compelled to resign, . . . that is, whether he would have had no choice but to resign." Evans v. Int'l Paper Co., 936 F.3d 183, 193 (4th Cir. 2019) (internal quotation marks omitted) (emphasis and second alteration in original) (quoting Blistein v. St. John's Coll., 74 F.3d 1459, 1468 (4th Cir. 1996), overruled on other grounds by Oubre v. Entergy Operations, Inc., 522 U.S. 422 (1998), as recognized by Adams v. Moore Bus. Forms, Inc., 224 F.3d 324, 327 (4th Cir. 2000)). This standard is "not established by showing merely that a reasonable person, confronted with the same

---

student's behavior can be imputed to a teacher's employer. See Webster v. Chesterfield Cnty. Sch. Bd., 38 F.4th 404, 416 (4th Cir. 2022) ("Unlike in many Title VII actions where the employer's options to remedy a hostile work environment include firing an employee for sexual harassment, the School Board has a more limited set of remedies available given that [it] must balance maintaining a nonhostile work environment with ensuring that children have access to public education.").

choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign . . . ." Id. (alteration in original) (quoting Blistein, 74 F.3d at 1468).

A constructive discharge claim may be based on the same facts which give rise to an employee's hostile work environment claim. See Suders, 542 U.S. at 147. "A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign." Id. This requires a showing of the requirements of both a hostile work environment claim and a constructive discharge claim. Evans, 936 F.3d at 192. In other words, "[t]he standard for constructive discharge . . . is stricter, in fact, than the one required to establish a hostile work environment." Bouknight v. S.C. Dep't of Corr., 487 F. Supp. 3d 449, 477 (D.S.C. 2020).

The magistrate judge recommended granting summary judgment on Harper's constructive discharge claim because Harper had not demonstrated that the reasonable person in her position would have felt compelled to resign. R&R at 18–19. In reaching this conclusion, the magistrate judge explained that Harper testified that she knew the District permitted teachers to transfer and that Haynes had previously permitted transfers but that Harper never made such a request herself. Id. at 18. The magistrate judge also noted that, when Harper left her position with the District, she explained it was because she wanted to work closer to home. R&R at 19; see also ECF Nos. 28-2, Harper Dep. at 45:2–48:12; 25-3 at 12.

Harper objects to this conclusion because she says there is a genuine issue of material fact over her constructive discharge. ECF No. 35 at 24. While she

13

acknowledges that District policy permitted her to seek a transfer, she points to her own deposition testimony which indicates that she did not subjectively think she would be allowed to transfer to a different school. Id. at 25–26. She then points to her testimony about the severity of the hostile work environment and in which she explained that the environment, as well as the District's purported inability to control that environment, caused her to leave her job. Id. at 26–28 (citing ECF No. 28-3, Harper Dep. at 182:7–25, 277:22–278:10). She also explains that the reason she did not reveal the real reason for her departure at the time she left was because she was worried that Haynes would not release her from her contract with the District and that she wanted to leave the District on peaceful terms. Id. at 28–29 (citing ECF No. 28-3, Harper Dep. at 300:16–302:10).

The magistrate judge is correct that Harper has not demonstrated that a reasonable jury could find for her in her constructive discharge claim. For reasons previously explained, Harper has not shown that the conduct she was faced with while employed at the District was sufficient to constitute a hostile work environment claim. Thus, "it follows she is unable to show 'something more' than that, which is what a constructive discharge claim requires." Bouknight, 487 F. Supp. 3d at 462 (citation omitted) (quoting Suders, 542 U.S. at 129). As such, summary judgment must be granted on this claim.

### B. Equal Protection Claim Under Section 1983

Harper bases her § 1983 claim on the allegation that defendants subjected her to a hostile work environment on the basis of her sex and race in violation of her equal protection rights. Compl. ¶ 52. The magistrate judge reasoned that, because she was recommending the court grant summary judgment on Harper's hostile work environment claim, the court should grant summary judgment on her § 1983 claim for the same

reasons. R&R at 20–21. Despite stating that she objects to the magistrate judge's recommendation on each of her claims, Harper does not provide any specific argument as to why the court should not grant summary judgement on her § 1983 claim. See ECF No. 35 at 2. Nevertheless, even if Harper had provided specific objections to the magistrate judge's recommendation with respect to this claim, a de novo review would still prompt this court to agree with the magistrate judge. Thus, Harper's § 1983 claim fails for the same reasons her hostile work environment claim fails. See Beardsley v. Webb, 30 F.3d 524, 529 (4th Cir. 1994) (applying the Title VII standard to a § 1983 claim based on hostile work environment); Brown v. Bratton, 2022 WL 17336572, at *11 (4th Cir. Nov. 30, 2022) ("Accordingly, because the district court did not err in granting summary judgment on Appellant's hostile work environment claims, Appellant's equal protection claims likewise fail.").

### C.  29 C.F.R. § 1604.11(e)

Harper's final cause of action is a claim for violation of 29 C.F.R. § 1604.11(e), an EEOC regulation which states:

> An employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing these cases the Commission will consider the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such non-employees.

The magistrate judge recommended granting summary judgment based on her finding that this regulation does not create an independent cause of action. R&R at 21–22. In reaching this conclusion, she specifically noted that Harper had not produced any caselaw in which a court had found this regulation to create an independent cause of action. Id. at 22.

In her objections, Harper quotes from Kandrac v. Charleston County School District, a case in which this court said: "Although the Fourth Circuit has never addressed this issue, other circuits have adopted EEOC regulation 29 C.F.R. § 1604.11(e) as the applicable rule when an employee seeks to hold an employer liable for the acts of non-employees in sexual harassment cases." ECF No. 35 at 30 (quoting Kandrac v. Charleston Cnty. School Dist., 2007 WL 9735153, at *13 (D.S.C. Mar. 16, 2007)). She then says that, since this court's decision in Kandrac, "the Fourth Circuit adopted the EEOC regulation as commensurate with the circuit's standards." Id. (citing EEOC v. Cromer Food Servs., 414 F. App'x 602, 606–07 (4th Cir. 2011)). Neither of these cases support Harper's contention that § 1604.11(e) creates a private right of action.

As for Kandrac, this court cited § 1604.11(e) as demonstrating the applicable standard for adjudicating the plaintiff's hostile work environment claim, but the court never said that a violation of the EEOC regulation could be asserted by the plaintiff as a separate, stand-alone claim. See 2007 WL 9735153, at *13. Likewise, the Fourth Circuit turned to § 1604.11(e) in Cromer Food Services when determining the applicable standard for a plaintiff's sexual harassment claim, but the court did not recognize an independent cause of action arising from the regulation itself. See 414 F. App'x at 606 ("The analysis [under § 1604.11(e)] is very similar to the standard used by this Circuit in the context of harassment of co-workers." (emphasis added)). As such, Harper has not provided a single case from this circuit in which a court has recognized § 1604.11(e) as creating an independent cause of action, and this court declines to be the first to do so. The magistrate judge was thus correct to recommend summary judgment on this claim.

## IV.  CONCLUSION

For the foregoing reasons, the court **ADOPTS** the R&R in full and **GRANTS** defendants' motion for summary judgment.

**AND IT IS SO ORDERED.**

                                **DAVID C. NORTON**
                                **UNITED STATES DISTRICT JUDGE**

**March 18, 2024**
**Charleston, South Carolina**