IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| LYNSEY HARPER, | ) |
| | ) |
| Plaintiff, | ) No. 2:21-cv-01472-DCN |
| | ) |
| vs. | ) **ORDER** |
| | ) |
| CHARLESTON COUNTY SCHOOL DISTRICT, and CHRISTOPHER HAYNES, *in his individual capacity*, | ) ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

This matter is before the court on plaintiff Lynsey Harper's ("Harper") motion to alter judgement, ECF No. 43. For the reasons set forth below, the court denies the motion.

## I. BACKGROUND

**A. Factual Background**[1]

In essence, this case presents an employment dispute between Harper, a teacher, and her employer, defendant Charleston County School District (the "District"). Harper's employment with the District began in January 2016, when she started teaching science at Daniels Jenkins Academy, an alternative school for elementary and middle school students. During the 2016–2017 and 2017–2018 school years, Harper taught science to middle school students at Liberty Hill Academy ("Liberty Hill"). Liberty Hill is a school that serves students with high special needs and students with disciplinary problems who would otherwise have been expelled from their home schools. The goal

---

[1] The court dispenses with citations and repeats the factual recitation it provided in its prior order for background purposes.

1

was for students to attend Liberty Hill for a finite period of time and return to their home schools once their behavior improved. Defendant Christopher Haynes ("Haynes") (together with the District, "defendants") was the principal at Liberty Hill.

Harper is a Caucasian woman and claims that she was regularly harassed by the students at Liberty Hill based on her race and gender. She alleges that the students frequently called her a "white b****," told her "f*** you" and "f*** off," swore at her, made sexual comments in her presence, and, on at least one occasion, threatened violence. Harper does not claim that she was ever harassed by any District employee.

During the 2016–2017 school year, the District implemented a new disciplinary referral system, in which teachers could submit referrals and administrators would review those referrals. Teachers could code the referrals that they filed in the system based on the category of misconduct involved. Many such referrals were filed in this system by many different teachers at Liberty Hill. Notably, Harper submitted 255 of the 3,776 referrals submitted to the system during that school year.

On November 8, 2017, Haynes sent an email to the teachers at Liberty Hill, which stated:

> I just finished "closing without action" 159 discipline referrals. I am not sure if you get email notices for those. However, I feel that you deserve transparency and an explanation when I do that to the referrals that you write. First of all, you did nothing wrong. You are writing referrals as we have asked you to do. The issue is that we have had is that with being short staffed, it has been virtually impossible for [assistant principal] Ms. Wicker to handle all of the referrals that have come to her. She has also had little help with this. I also believe that after a certain time, referrals are not effective in changing behaviors. That is why I went and closed the referrals. I closed all referrals that had not been acted upon from the beginning of the year until October 13th. Any referrals written after that date are still active and will be handled immediately.

After that, many of the student discipline referrals were "closed without action" at the end of the 2017–2018 school year.

Despite Harper's signing a contract to teach at Liberty Hill during the 2018–2019 school year, she began looking for a new teaching position in a different district in February 2018. On June 13, 2018, she sent a resignation email to Haynes, which read:

> As you know, I was looking for a teaching position closer to home. I interviewed with the principal at College Park Middle School today and I was offered a position for the 2018-2019 school year contingent on being released from my contract with Charleston County. I have enjoyed the last two years and I have learned a lot from you.

The District then released Harper from her contract.

**B. Procedural History**

The South Carolina Human Affairs Commission ("SCHAC") issued Harper a Notice of Right to Sue Letter on May 15, 2019. She then filed this case on May 18, 2021. ECF No. 1, Compl. She asserts claims for (1) race-based and sex-based hostile work environment and constructive discharge in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq.; (2) violation of her equal protection rights pursuant to 42 U.S.C. § 1983; and (3) violation of 29 C.F.R. § 1604.11(e).[2] See Compl. ¶¶ 37–44, 51–60. Pursuant to 28 U.S.C. § 636 and Local Civ. Rule 73.02(B)(2) (D.S.C.), the action was thereafter referred to Magistrate Judge Mary Gordon Baker for pretrial proceedings.

Defendants moved for summary judgment on February 21, 2023, ECF No. 24, and Harper responded in opposition on March 27, 2023, ECF No. 28. On July 28, 2023, the magistrate judge issued a Report and Recommendation ("R&R") in which she recommended that the court grant defendants' motion. R&R, ECF No. 30. Harper

---

[2] Harper also initially asserted another cause of action pursuant to 42 U.S.C. § 1981 but later withdrew that claim. See Compl. ¶¶ 45–50; ECF No. 28 at 1.

objected to the R&R on August 31, 2023, ECF No. 35, and defendants replied on September 14, 2023, ECF No. 36. On March 18, 2024, the court adopted the R&R and granted summary judgment. ECF No. 38. The clerk then entered judgment against Harper the following day on March 19, 2024. ECF No. 39.

On March 27, 2024, Harper moved, with defendants' consent, for an extension of time to file a motion to reconsider, ECF No. 40, and the court granted that motion the same day, ECF No. 41. On April 25, 2024, Harper moved for the court to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e). ECF No. 43. Defendants responded in opposition on May 23, 2024. ECF No. 47. Harper replied on June 13, 2024. ECF No. 50. As such, the motion is now fully briefed and ripe for the court's review.

## II.  STANDARD

### A.  Reconsideration of Final Judgment

Harper brings her motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. ECF No. 43. However, motions made pursuant to this rule "must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). District courts cannot extend this time period, so even in cases in which such an extension is granted, the court must construe an untimely Rule 59(e) motion as if it were brought under Rule 60(b). United States v. Griffin, 397 F. App'x 902, 903 (4th Cir. 2010); Gravatt v. Montgomery Cnty., 2024 WL 345975, at *1–2 & n.* (4th Cir. July 17, 2024). In consequence, because Harper filed her motion more than 28 days after the entry of judgment, the court construes her motion as if it were brought pursuant to Rule 60(b).

4

Under Rule 60(b), the court may relieve a party from judgment under certain limited circumstances. Courts in this circuit require that a movant first show "timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances." Werner v. Carbo, 731 F.2d 204, 207 (4th Cir. 1984) (footnote omitted). If the movant makes this showing, she must then demonstrate that she is entitled to relief under one of the six grounds listed in the Rule. Id. That is, she must show:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "While [the catchall in Rule 60(b)(6)] includes few textual limitations, its context requires that it may be invoked in only 'extraordinary circumstances' when the reason for relief from judgment does not fall within the list of enumerated reasons given in Rule 60(b)(1)–(5)." Aikens v. Ingram, 652 F.3d 496, 500 (4th Cir. 2011). Notably, "if the reason asserted for the Rule 60(b)(6) motion could have been addressed on appeal from the judgment, [courts] have denied the motion as merely an inappropriate substitute for an appeal." Id. at 501.

**B. Order on R&R**

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C.

5

§ 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made. Id.

However, in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted). Furthermore, "[a] party's general objections are not sufficient to challenge a magistrate judge's findings." Greene v. Quest Diagnostics Clinical Lab'ys, Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted). When a party's objections are directed to strictly legal issues "and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citation omitted). Analogously, de novo review is unnecessary when a party makes general and conclusory objections without directing the court's attention to a specific error in a magistrate judge's proposed findings. Id.

**C. Summary Judgment**

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ.

6

P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In so doing, the court must view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III. DISCUSSION

In general, Harper disagrees with the court's finding in its prior order that there were no genuine issues of material fact related to her Title VII and § 1983 claims. ECF No. 43. The court first finds that these arguments could have been raised on appeal, and the court denies her motion for this reason. See Aikens, 652 F.3d at 501; Dowell v. State Farm Fire & Cas. Auto Ins. Co., 993 F.2d 46, 48 (4th Cir. 1993) ("It is a well settled principle of law that a Rule 60(b) motion seeking relief from a final judgment is not a substitute for a timely and proper appeal."). In any event, even if the court were to reach the merits of Harper's motion, the court would deny the motion because she has expressed nothing more than mere disagreement with the court's prior order, which is not

an appropriate ground for relief under either Rule 60(b) or 59(e).  See Hutchinson v. Staton, 994 F.2d 1076, 1082 (4th Cir. 1993); Anderson v. Health, 2025 WL 343472, at *3 (M.D.N.C. Jan. 30, 2025).

     As the court explained in its prior order, Harper asserts her Title VII claim under both a hostile work environment theory and a constructive discharge theory.  To establish a prima facie Title VII hostile work environment claim based on her sex and race, Harper must demonstrate four elements: (1) she experienced unwelcome harassment; (2) the harassment was based on her race and/or sex; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis of imposing liability on her employer.  Perkins v. Int'l Paper Co., 936 F.3d 196, 207–08 (4th Cir. 2019).  The court found that there were genuine issues of material fact regarding the first three elements and primarily focused its analysis on the fourth element.  ECF No. 38 at 6–7.  A plaintiff must establish two prongs for third-party harassment to be imputable to his or her employer: "[1] the employer knew or should have known of the harassment and [2] failed 'to take prompt remedial action reasonably calculated to end the harassment.'"  Freeman v. Dal-Tile Corp., 750 F.3d 413, 423 (4th Cir. 2014).  Ultimately, the court granted summary judgment on Harper's hostile work environment claim because Harper had not pointed to any evidence showing that she notified her employer that she considered the students' behavior as harassment, and there was therefore no genuine dispute of material fact as to whether the students' behavior could be imputed to the District.  ECF No. 38 at 11.  The court also granted summary

judgment on Harper's § 1983 equal protection claim for the same reason.³  ECF No. 38 at 14–15.

Harper argues that this was in error and that the court should alter judgment on her hostile work environment and equal protection claims. ECF No. 43 at 3–21. She first contends that the court erred in finding that there was no genuine issue of material fact over whether knowledge of the alleged harassment could be imputed to defendants. Id. In particular, she characterizes the court's prior ruling as requiring that a plaintiff "use a particular form or magic words to place her employer on notice" of harassment. Id. at 6. Harper repeatedly claims that the court's prior order stated that she was required to report harassment to human resources for a complaint to be actionable. Id. at 6, 8. To be clear, that is not what the court's order did. Rather, the court reviewed the evidence Harper presented and found that it did not show that Harper put defendants on notice of the fact that she considered the students' behavior as harassment. ECF No. 38 at 10. Thus, while the court did mention that Harper had not reported the harassment to the human resources department, despite the fact that she was aware that this was an option, the court did not state that this was a prerequisite for suit.

Similarly, Harper points, once again, to the disciplinary referrals she wrote for students and argues that this is evidence that the alleged harassment could be imputed to defendants. ECF No. 43 at 11–16. The court considered this evidence in its prior order and explained why this evidence was insufficient to support her Title VII claim. See ECF No. 38 at 8–11. Harper then goes on to point to other evidence, all of which she either

---

³ Harper's equal protection claim pursuant to § 1983 is analyzed under the same standard as her Title VII claim. See Beardsley v. Webb, 30 F.3d 524, 529 (4th Cir. 1994).

raised or could have raised in her earlier filings, and argues that this evidence further shows the existence of a genuine issue of material fact regarding whether she can impute knowledge to defendants. ECF No. 43 at 16–21; see also ECF No. 50 at 5 ("Plaintiff's Rule 59(e) Motion—like her other filings—recounts, in detail everything that Plaintiff did to notify Defendants of the hostile environment, as well as other circumstances placing Defendants on notice of a severe problem with harassment of teachers by students.").[4] Pointing to the same evidence and repeating the same arguments she raised previously is insufficient under Rule 59(e) or 60(b), and the court denies this portion of her motion accordingly. See Hutchinson v. Staton, 994 F.2d 1076, 1082 ("[M]ere disagreement does not support a Rule 59(e) motion."); Brooks v. Berkeley Cnty. Sheriff's Off., 2024 WL 5193758, at *3 (D.S.C. April 10, 2024) (denying Rule 60(b) motion because the movant "merely rehashe[d] arguments already raised to and ruled upon by the trial court."); Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983) ("Plaintiff improperly used the motion to reconsider to ask the Court to rethink what the Court had already thought through—rightly or wrongly."); Durkin v. Taylor, 444 F. Supp. 879, 889 (E.D. Va. 1977) ("Whatever may be the purpose of Rule 59(e) it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge.").

Harper next argues that there is a genuine issue of material fact over whether defendants took prompt remedial action reasonably calculated to end the harassment. ECF No. 43 at 21–29. In its prior order, the court explained that, because there was no

---

[4] Indeed, sections of her motion to alter judgment appear to have been copied and pasted, albeit with edits, from her objections to the magistrate judge's R&R. Compare ECF No. 35 at 5–15; with ECF No. 43 at 15–21.

genuine dispute of material fact over whether knowledge could be imputed to defendants, the court declined to consider whether defendants' actions were reasonably calculated to remedy the situation. ECF No. 38 at 11 & n.5. The court declines to reach this issue in this order for the same reason.

Finally, Harper argues that the court erred in granting defendants summary judgment on her Title VII claims to the extent they were based on a constructive discharge theory. ECF No. 43 at 29–31. Harper asserts that, in its prior order, the court required that Harper prove her claim rather than determining whether she had demonstrated the existence of a genuine issue of material fact. Id. That is simply not what the court did. Instead, the court explained that the standard for establishing a constructive discharge claim is "stricter" than that required to establish a hostile work environment claim. ECF No. 38 at 13 (quoting Bouknight v. S.C. Dep't of Corr., 487 F. Supp. 3d 449, 477 (D.S.C. 2020)). Therefore, because Harper's hostile work environment claim failed, it necessarily followed that her constructive discharge claim also failed. Id. at 14. By failing to address the court's reasoning, Harper has not pointed to any error in the court's prior order. As such, the court denies her motion to alter or amend judgment. See, e.g., Hutchinson, 994 F.2d at 1082; Brooks, 2024 WL 5193758, at *3.

## IV.  CONCLUSION

For the foregoing reasons, the court **DENIES** Harper's motion to alter or amend judgment.

**AND IT IS SO ORDERED.**

                                    **DAVID C. NORTON**
                                    **UNITED STATES DISTRICT JUDGE**

**March 18, 2025**
**Charleston, South Carolina**